Reed, J.,
delivered the opinion of the court.
The errors assigned upon the admission of testimony do not appear to be urged or to be relied upon in argument. The ruling of the court may be liable to technical criticism, but no serious errors sufficient to warrant extended examination or the reversal of the judgment occurred. The supposed lack of evidence to establish the respective claims of the different *223 laborers will not be regarded. It clearly appears that subordinates under Welch were required to and did keep time' books, and such time books were put in evidence and proof of the respective claims satisfactory to the jury was made, nor were the claims controverted or any attempt made to reduce them by proof of payments or otherwise. In the trial of the case, as in the arguments of counsel, the defense was put upon the broad ground, that under the facts as shown by the evidence, Welch, the general manager, could not render his company liable for any debts contracted by him in prosecuting work upon the Lucky Lode. All questions in regard to Welch’s purchase or contract to purchase and his lease of the mine on behalf of his company may be eliminated from the discussion. It cannot be successfully claimed that Welch, as general manager of the affairs of the company, had by virtue of his office authority to bind his company by pin-chase or lease of real property, either in his own name or the name of the company, without special authority. In determining the rights of the laborers employed it is unimportant in whom the title to the property was, or whether purchased or leased by the Oro Company or Welch, or whether by either. Other considerations and facts must control.
Welch was the undisputed manager of the company, was the only responsible party in charge of the business of the corporation. The business of the company was the mining and reduction of ores. For the latter business it had its own mills in the immediate vicinity of its mines, was taking ores from its mines and reducing them at the mills. Both lines of business were under the control of Welch as manager. The mining of ores, their hauling and delivery, the employment of men in each and every department, and the furnishing of necessary supplies, were clearly incidental to and within his authority. No question can arise on this proposition, and within these lines and the scope of his authority, debts contracted by him would be the debts of the company. In his capacity of manager of the mill it would, certainly, be his duty to supply it with ore if available. *224 These duties and his authority in the premises are so elementary and so well established, no authority is needed in their support. Apparently in the discharge of.his duty as manager, for the purpose of getting more ore for the mill, he commenced mining ore upon the Lucky Lode, constructed a road and built a shute, employed men, took a portion of the men and tools from the company’s mine and transferred them to the Lucky, the ore was taken to and reduced at the company’s mill, and shipped and sold to smelters mixed with the ore from the company’s mine and, as far as shown, the proceeds applied to the wants of the company. It is shown by the evidence that on several occasions Welch, when asked by laborers who was responsible for the payment of wages on the Lucky Lode, informed the parties that they need have no fears, that it was just the same as before, and that the Oro Company was responsible and. stood behind the whole thing and paid the wages. The evidence shows that time books for labor upon the Oro Mine and the Lucky Mine were kept separate and distinct; that payments of both, when made, were made in the same manner by the checks of .Welch as manager, and that in two or three instances the amounts due individuals for labor and supplies on the Lucky Lode and for the same on the Oro Mine were consolidated, and one check made embracing both payments.
Anderson, Law Die., defines a manager to be “ The person who really has the most general control over the affairs of a corporation, and who has knowledge of all its business and property, and who can act in emergencies on his own responsibility. He may be considered as the. principal officer.”
“ The very term implies a general supervision of the affairs of the corporation in all its departments.” Spangler v. Butterfield, 6 Colo. 356; Mining Co. v. Lawson, 57 Wis. 404.
“ He must be considered the principal officer to whom is delegated the entire control and management of the corporate property as far as operating the same is concerned. * * * In the absence of defined powers, the powers incident to the office and employment, would embrace that of employing the *225 necessary labor, opening, developing and protecting the mine, the purchasing * * * of necessary tools and supplies and mining and selling the ore, rvith power to bind the corporation for bills necessarily contracted in the prosecution of the work. * * * Other parties in dealing with the corporation have a right to assume, and act upon the presumption, that all the powers pertaining to the office generally are possessed by the individual in question, unless notified of restrictions and limitations.” R. E. Lee S. M. Co. v. Smelting Co., 16 Colo. 118.
It is contended that the acts of Welch were unknown to and a fraud upon his company. Admitting it, how could his employees be affected by it ? The employment was directly in the line of his authority; employees were not required nor expected to investigate the title and ascertain the tenure by which the property was held, and had they known the holding was in the name of Welch, such information alone would not affect the liability. The knowledge of the general manager is imputed to his corporation. The knowledge of a manager is, in respect to others, the knowledge of the company.
In Lit. Pitts. M. Co. v. Little Chief M. Co., 11 Colo. 223, it is said: “ A principal is bound to know what his agent does in the course of his employment, and particularly so when the profits of the conduct of such agent go in the pockets of the principal.” This is in harmony with the general law of the subject. Had employees known the title to the property and right to mine was in Welch and not in the corporation, they might reasonably suppose from the course of business it was by design and with full knowledge. They were never informed that it was a distinct and separate enterprise. As far as shown by the evidence the only information was obtained directly from Welch, to the effect that the work was being prosecuted by the company and it was responsible for it. These statements made by him were, in legal effect, those of the company. It is not shown whether the mining upon the Lucky was profitable or disastrous, — presumably the latter. Imputing, as the law does, the knowl *226 edge of the manager to the company, we find it operating the mine for some months, and according to its theory occupying the equivocal position of being able to affirm the acts of the agent if profits resulted, and to disaffirm if disastrous. Such positions are not tolerated in law. It was only after Welch’s connection with the company ceased, and he had left the country that his successors attempted to repudiate his transactions in the premises.
In Union M. Co. v. R. M. N. B'k, 2 Colo. 248, the leading case upon this branch of law in this state, it was said: “ If an officer of a corporation is allowed to exercise general authority in respect to the business of the corporation, or a particular branch of it for a considerable time, in other words, if he is held out to’the world as having authority in the premises, the corporation is bound by his acts in the same manner as if the authority were expressly granted.”
The same doctrine is declared in Com. M. Ins. Co. v. Union Mut. Ins. Co., 19 How. 322; Peyton v. St. Thomas Hos., 3 C. & P. 363; C. B. & Q. R. R. Co. v. Coleman, 18 Ill. 298; St. L. A. & Chi. R. R. Co. v. Dalby, 19 Ill. 375; Daugherty v. Hunter, 54 Pa. St. 382; Allegheny City v. McClurkin, 14 Pa. St. 81; Ardesco Oil Co. v. Gilson, 64 Pa. St. 150.
This case is readily distinguishable from the case of Victoria Mining Co. v. Fraser, 2 Colo. App. 14, relied upon by counsel for the reversal of the judgment. In this, the debts were contracted clearly within the well defined authority of the manager in the line of his duty, which was the prosecution of the business of the company. In that, the purchasing of a reduction plant of machinery for the company was not in the defined limits of his authority, and in order to bind the company for debts so contracted, proof of special authority, aside from that incident to his position of general agent or manager, must be shown.
The instruction (No. 13) has been ably and vigorously assailed by counsel in argument. A careful and patient examination of it in the light of the authorities and" the principles of law stated above fail to show it faulty or erroneous; it ap *227 pears to be a plain, clear and intelligible statement of tbe well established principles of law controlling the case.
The questions of fact and of the knowledge of the employees were submitted to the jury in plain and unmistakable language and were found against the appellant, and such findings appear to have been warranted by the evidence. The law given, as applicable tct such a finding of facts, as shown by the foregoing discussion and authorities cited, was an enunciation of well established principles.
The judgment must be affirmed.

Affirmed.